**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 23-cr-00300-CNS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.      IKPONMWOSA PERO ERHINMWINROSE,

        Defendant.

## Government's Notice of Federal Rule of Evidence 801(D)(2)(A) and (E) Statements

      Ikponmwosa Erhinmwinrose led a conspiracy that obtained over $8 million in fraud proceeds by using victims' stolen personal identifying information (PII). He used dozens of email accounts to hide his true identity and deceive government benefit providers. He directed coconspirators including co-defendants Agbure, Conspirator 2, Elegba, and Tobore and kept electronic ledgers of his criminal exploits. As part of the investigation of Erhinmwinrose, the government searched approximately 122 email accounts and 30 electronic devices. These accounts and devices consist of (1) personal accounts or devices in the conspirators' own names; (2) accounts or devices utilized by Erhinmwinrose for fraudulent activity but not in his own name; (3) accounts or devices utilized by coconspirators for fraudulent activity but not in their own name.

      Due to the volume of electronic evidence, the government hereby provides notice of which accounts reflect (a) Erhinmwinrose's own statements (admissible under Federal Rule of Evidence 801(d)(2)(A)), and (b) coconspirator statements (admissible under Rule 801(d)(2)(E)). This notice is intended to make the preliminary showing

contemplated by Rule 104(a) as to identity of the user for and the bases for admissibility of statements in each account. The Court has discretion to make preliminary findings either (a) based on this written proffer, or (b) through a pretrial evidentiary hearing. The government has conferred with counsel for the defendant prior to filing this notice, and counsel indicated they would request a pretrial hearing on issues raised in this notice.

I.   **Notice of electronic-evidence categories and defendant's statements**

The government intends to present evidence from email accounts and devices (A) in conspirators' own names; (B) used by Erhinmwinrose but not registered in his name; and (C) used by coconspirators but not registered in their names.

  A.   Accounts in Erhinmwinrose's and other conspirators' own names

Erhinmwinrose utilized multiple email accounts tied to his own name, including three Google accounts (icomo44real, icomo4real, and ipemyp2), one Apple ID (icomo4real@gmail.com), and one Microsoft hotmail account (icomo4real). *See* Ex. 1.

Other conspirators' personal accounts or devices also contain relevant statements. Agbure used electronic accounts in his own name or the name of his businesses. Ex. 2 (listing accounts and devices controlled by conspirators from which the government intends to introduce statements for their truth[1]). Multiple devices seized from Tobore's residence were associated with his own name. *Id.*

  B.   Accounts used by Erhinmwinrose but not registered in his name

Erhinmwinrose utilized multiple Google accounts not in his own name, including

---

[1] The government has not listed devices or accounts in Ex. 2 where it intends to introduce only non-hearsay statements. For example, devices seized from Agbure confirm his identity as Conspirator 1 based on files in unallocated space.

(i) ledger accounts, and (ii) facilitating accounts. *See* Ex. 1.

      i.    *Ledger account*.

The informacioncuenta1000 Google account was Erhinmwinrose's central ledger of criminal activity. It included:

- Lists of his criminal activity, such as lists of submitted tax returns and EIDL, PPP, and unemployment applications (Ex. 3)

- Log-in and password information for tools to facilitate criminal activity, such as email accounts, mobile hotspots, bank accounts, and sites on the darkweb to get stolen PII (Ex. 4) that match passwords he used to access his personal accounts (Ex. 5)

- Messages with coconspirators to coordinate criminal activity (Ex. 6)

      ii.    *Facilitating accounts*.

Erhinmwinrose used other email accounts to facilitate specific fraudulent activity:

- Email accounts created using the names or companies associated with identity-theft victims immediately before submitting PPP applications in those names (*e.g.*, mosleyfamilypoultry, yawntrucking, dffpharvey, durentreeinc richardspoultryinc).

- Email accounts used to submit multiple UI or EIDL applications using the Google dot variation method (*e.g.*, arizonaonetwothree, farofarofarox, greg.rudd.f, maggie01jewltd, newyorknewyorknewyorkx, paulettegibsonzx1, and southafricaloveyousomuch).

- Email accounts used for a broader range of criminal activity (*e.g.*, gobegreenlandz, haighnichola, and robbiemcdoniel), including to facilitate the money laundering conspiracy, provide instructions to coconspirators, and exchange information—such as fraudulent documents or stolen PII—between coconspirators.

C.    <u>Accounts or devices used by coconspirators</u>

Coconspirators controlled other electronic accounts and devices under false names. *See* Ex. 2. For example, when preparing fraudulent PPP applications, Erhinmwinrose solicited and received fabricated and fraudulent bank and tax

documents from the capili00567 email account controlled by Agbure. *See* Ex. 6, at 7, 21-35, 41-48 (messages from Agbure to Erhinmwinrose); Ex. 7 # 5 (*James* log). At other times, Agbure requested bank account information to use on fraudulent EIDL applications; Erhinmwinrose responded from his informacioncuenta1000 google account with the requested bank account numbers. *See* Indictment ¶ 21(a); Ex. 6, at 4.

## II.    Admission of opposing party statements

### A.    The Court can provisionally admit Rule 801 statements prior to trial and is not bound by rules of evidence in making preliminary findings

Preliminary questions about the admissibility of defendant or coconspirator statements pursuant to Rule 801(d)(2) are governed by Rule 104(a). The rules of evidence (except those on privilege) do not apply "on a preliminary question of fact governing admissibility." Fed. R. Evid. 1101(d)(1). Thus, the Court can provisionally admit Rule 801(d)(2)(A) or (E) statements by written proffer or following an evidentiary hearing. Rule 104 contemplates conducting hearings on preliminary questions outside the jury's presence, and conducting such hearings in advance of trial "helps streamline trials by permitting the government to introduce" Rule 801 statements "at any point during the trial rather than waiting until after it has provided sufficient independent proof of" identity or a conspiracy. *United States v. Mireles*, 116 F.4th 713, 722 n.3 (7th Cir. 2024) (discussing in context of coconspirator statements).

In the context of coconspirator statements, the Tenth Circuit has announced a "strong preference" for conducting a pretrial *James* hearing to rule on admissibility. *See United States v. Hardy*, 149 F.4th 1153, 1160 (10th Cir. 2025). But sometimes a written proffer is sufficient and no evidentiary hearing is needed, such as when the admissibility

is "without doubt, unimpeachable, and uncontroverted so that no credibility or factual determination is required." *United States v. Perez*, 989 F.2d 1574, 1582 n.3 (10th Cir. 1993) (en banc); *see also United States v. Mendoza-Haro*, 2013 WL 2149448 (D. Colo. May 16, 2013) (discussing use of written proffers in lieu of a *James* hearing).

B.   Rule 801(d)(2)(A) defendant admissions

For a statement to be admissible as a defendant's statement under Rule 801(d)(2)(A), the Court must find by a preponderance of the evidence that the defendant is the person who made the statement. *United States v. Brinson*, 772 F.3d 1314, 1320 (10th Cir. 2014). For electronic accounts, the Court can make this finding even if a defendant presents evidence that other individuals had access to the account with the defendant's statements and sometimes posted messages from it. *Id.* at 1321.

C.   Rule 801(d)(2)(E) coconspirator statements

For a statement to be admissible as a coconspirator's statement under Rule 801(d)(2)(E), the Court must first find by a preponderance of the evidence "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *United States v. Hall*, 473 F.3d 1295, 1302–03 (10th Cir. 2007) (quotation omitted). The court may consider the hearsay statement, as well as independent factors, in deciding whether the government has established a conspiracy. *See* Fed. R. Evid. 801(d)(2); *see also United States v. Bourjaily*, 483 U.S. 171, 181 (1987). Even if it elects not to hold a *James* hearing, the district court must still make preliminary factual findings regarding the admissibility of coconspirator statements. *See Perez*, 989 F.2d at 1580.

1. <u>Proving the existence of a conspiracy</u>

To establish a conspiracy, the government must show that "(1) there was an agreement to violate the law, (2) the declarant knew the essential objectives of the conspiracy, (3) the declarant knowingly and voluntarily took part in the conspiracy, and (4) the coconspirators were interdependent." *United States v. Rutland*, 705 F.3d 1238, 1249 (10th Cir. 2013). "The conspiracy supporting the introduction of the out-of-court statement need not be the same as the conspiracy charged in the indictment, so long as the statement was in furtherance of the uncharged conspiracy." *Id.* at 1248 n.4.

In proving a conspiracy existed, the agreement "may be inferred from circumstantial evidence." *United States v. Bucaro,* 801 F.2d 1230, 1232 (10th Cir. 1986). No formal or explicit agreement is required; the government need only show concerted action—two or more persons working together with a common design, purpose, or understanding. *American Tobacco Co. v. United States*, 328 U.S. 781, 809–10 (1946). For purposes of a pre-trial admissibility finding under Rule 801(d)(2)(E), the government need not prove the conspiracy was illegal or unlawful. *United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987).

2. <u>Connecting a person to the conspiracy</u>

Once the agreement is established, only "slight evidence" is needed to connect a coconspirator to the conspiracy. *See United States v. Dickey*, 736 F.2d 571, 583 (10th Cir. 1984). "A defendant who acts in furtherance of the object of the conspiracy may be presumed to be a knowing participant." *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990). A minor role is not a defense. *United States v. Savaiano*, 843 F.2d

6

1280, 1294 (10th Cir. 1988).

The government is not required to prove a defendant knew the coconspirator who made the statement. *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006). Nor must the government identify all coconspirators by name: "[t]he identity of the declarant need not be established so long as the district court determines that the declarant was a member of a conspiracy with the defendant and that the statement was made in the course of and in furtherance of the conspiracy." *United States v. Zuniga-Perez*, 69 F. App'x 906, 913 (10th Cir. 2003). "What is essential is that the government show that the unknown declarant was more likely than not a conspirator." *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2006) (citation omitted); *see also* 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence,* § 426, at 299 (2d ed. 1994) ("[I]f it is clear that the statement was made by someone in a conspiracy with the defendant, inability to attribute the statement to a particular person does not prevent resort to the [coconspirator] exception.").

A coconspirator need not agree to, know of, or participate in, every aspect of the conspiracy. *See United States v. Smith*, 413 F.3d 1253, 1276 (10th Cir. 2005) (overruled on other grounds). Each member is criminally liable for any reasonably foreseeable crimes during and in furtherance of the conspiracy. *United States v. Cherry*, 217 F.3d 811, 817 (10th Cir. 2000).

       3.    <u>Determining whether a statement is in furtherance of a conspiracy</u>

Before a statement may be admitted as a coconspirator statement, there must be some evidence showing that it was made "in furtherance" of the conspiracy. To be "in

furtherance," statements need only promote the objectives of the conspiracy. *See United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007). The government is not required to show the statement actually advanced the conspiracy: "we do not focus on its actual effect in advancing the goals of the conspiracy but on the declarant's intent in making the statement." *Perez*, 989 F.2d at 1578 (quotation omitted). Nor does the statement need be made to another conspirator. *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) (deeming admissible a statement made by a co-conspirator to a government agent where the motive for making the statement was to further the conspiracy).

Example statements made "in furtherance" of a conspiracy include (corresponding to numbers listed as "801 Basis for Admission" on Exhibit 7):

1. Statements that promote a conspiracy's objectives. *See Townley*, 472 F.3d at 1273; *United States v. Peveto*, 881 F.2d 844, 852 (10th Cir. 1989).

2. Statements intended to recruit potential coconspirators or otherwise induce assistance of others in carrying out the objectives of the conspiracy. *See Williamson*, 53 F.3d at 1521.

3. Statements identifying a coconspirator or his/her role. *Id.*

4. Statements to explain important events in the conspiracy. *See Townley*, 472 F.3d at 1273.

5. Statements designed to give directions to facilitate the objectives of the conspiracy. *See United States v. Massa*, 740 F.2d 629, 638 (8th Cir. 1984).

6. Statements designed to advise coconspirators of the progress of the conspiracy and keep them abreast of conspiratorial activities. *See Perez*, 989 F.2d at 1578; *United States v. Smith*, 833 F.2d 213 (10th Cir. 1987).

7. Statements intended to assure the listener of a conspirator's ability to consummate a transaction. *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir. 1985).

8. Statements intended to control damage to the conspiracy. *See United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988).

9. Statements prompting the listener to respond in a way that facilitates the conspiracy. *See United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987).

10. Statements to conceal the objective of the conspiracy. *See United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989).

11. Statements designed to gain the trust of potential coconspirators, to reassure trustworthiness, or to allay suspicions or fears. *See Smith*, 833 F.2d at 219.

12. Statements that set in motion acts which are an integral part of the conspiracy. *See United States v. Paris*, 827 F.2d 395, 400 (9th Cir. 1987).

13. Statements that reveal the existence of a conspiracy. *See United States v. Garcia*, 994 F.2d 1499, 1505 (10th Cir. 1993).

14. Statements that indicate payments made or demands for payment related to the conspiracy. *See United States v. Esacove*, 943 F.2d 3, 5 (5th Cir. 1991).

**III.   Factual proffer related to defendant and conspirator statements**

    A.   <u>Erhinmwinrose controlled the ledger and facilitating accounts</u>

The evidence that Erhinmwinrose used the ledger and facilitating accounts is incontrovertible. He accessed both the ledger and facilitating accounts from the same browser and computer as he used to access his personal ipemyp2 gmail account. *See* Ex. 8 at 1-2 (accounts linked by cookies to ledger account); *id.* at 3 (accounts linked by cookies to richardspoultryinc account). He admitted in a proffer that ipemyp2 was one of his personal gmail accounts, which was confirmed by devices seized from his business.

In the ledger account, he maintained copies of his own birth certificate, photo, travel documents, and other personal records in a Google drive folder labeled "b4 I go to lagos" (where he was born and frequently traveled). Ex. 9, at 3-8 (excerpting documents in Google Drive folder). At one time, the ledger account's display name was

"Pero IK"—the same display name as his icomo4real gmail account—and he emailed his personal email account from the informacioncuenta1000 account. *Id.* at 1-2. His search activity showed that he searched for emails containing his first and last name (*id.* at 10-12) and from his personal email accounts (*id.* at 13). References to his name appear in Google Hangout messages. *See id.* at 9 (chat message attachment displaying his credit report and yahoo email address); Ex. 6 at 2 ("how far ike"). He used the same passwords—such as Fool2222, fool@@2222, ikddon22, and mumu@@22—for the facilitating and ledger email accounts that he used for everyday accounts such as registering his corporate entities, logging into Comcast, or ordering a Domino's pizza. *Compare* Ex. 4 (passwords for and in ledger and facilitating accounts) *with* Ex. 5 (passwords for and in personal accounts). Indeed, in his ledger account, he kept usernames and passwords for many of his facilitating accounts under the subject line "All email in one place." Ex. 4 at 1. He used distinctive subject lines across his personal and fraud accounts, such the Subject of "Okay" when sending important or incriminating information and the Subject of "Test" when he wanted to teste how new email accounts would display to third parties. *Compare* Ex. 10, at 1-7 (emails from personal accounts) *with* Ex. 10, at 8-24 (emails from ledger or facilitating accounts). Hotspot records show that he accessed and created multiple email accounts in other names from his residence and business. His ledger account also was used as the recovery account for many of the email accounts listed in Ex. 1. *See* Ex. 11 (accounts listing informacion.cuenta1000 as recovery account). His distinctive voice can be heard on recorded phone calls related to PPP loans submitted using the facilitating accounts.

His personal gmail accounts contain additional evidence of his control of the ledger and facilitating accounts. He saved screenshots of content from the ledger account in his personal accounts. Ex. 12, at 1-2. He emailed one of the facilitating accounts from his personal account with a copy of a fabricated tax document that was submitted days later with a PPP loan application. Ex. 10, at 4.

All this evidence easily satisfies the preponderance standard for attributing the ledger and each facilitating email account to Erhinmwinrose.

  B. <u>Statements of coconspirators to Erhinmwinrose and to each other are admissible coconspirator statements</u>

   i. <u>Members of the conspiracy</u>

In the fraud conspiracy (Count 1), Erhinmwinrose was the central hub coordinating activity of others including Agbure,[2] Conspirator 2, and other conspirators.

In the money laundering conspiracy (Count 2), Agbure and Erhinmwinrose shared a network of coconspirators—including Conspirator 2, Elegba, Tobore, and Y.K.—who received fraud proceeds from Agbure and Erhinmwinrose and then laundered money through multiple transactions.

   ii. <u>Duration of the conspiracy</u>

The fraud conspiracy occurred between March 2020 and at least June 2021. Indictment ¶ 1. The money laundering conspiracy occurred between March 2020 and at least May 2021. Indictment ¶ 23.

   iii. <u>Existence and nature of the conspiracy to commit wire fraud</u>

---

[2] After the indictment, additional evidence was uncovered that indicated that Agbure was Conspirator 1, including files on devices seized from Agbure's residence.

Erhinmwinrose obtained lists of stolen PII to submit fraudulent tax returns and applications for EIDLs, PPP loans, and unemployment benefits. As part of the fraud conspiracy, he was a central hub and communicated from his ledger account with Agbure, Conspirator 2, and unidentified conspirators to submit fraudulent applications. For example, after filing 19 New York unemployment claims using stolen PII, he emailed the PII he was using to Agbure to keep going, noting in the email that "i stop at 19." Ex. 3, at 2. Agbure replied to note the claims he then submitted. Ex. 6, at 10-11. After emailing a fabricated tax document for a fraudulent PPP application from his personal google account to one of his facilitating accounts (Ex. 10, at 4-6), he asked Agbure to create a fake bank statement to help with the fraudulent PPP application Erhinmwinrose would later submit (Ex. 6, at 7). He also exchanged documents and information about PPP applications with Conspirator 2 and an unknown conspirator. *See* Ex. 7 #s 8-11. Erhinmwinrose engaged in his fraud activity using various tools of fraud, including Comcast and Verizon hotspots, custom email domains, and virtual private networks, and online people search tools, and he kept passwords in his ledger account for many of these tools and shared them with conspirators. Ex. 4, at 5-6, 8.

Erhinmwinrose also exchanged stolen PII lists, corporate registrations, fabricated documents, and bank account information with Agbure, Conspirator 2, and others. Ex. 7 # 5, 8-11. In total, Erhinmwinrose and his coconspirators obtained more than $8.4 million in COVID-relief benefits. Hundreds of victims were unaware that their PII had been used to submit fraudulent applications and became aware when, *e.g.*, they received a payment demand letter or had to defend against accusations on Facebook message boards of

using the pandemic for personal profit after loan data was posted online.

          iv.      <u>Existence and nature of conspiracy to engage in money laundering</u>

Erhinmwinrose was the organizer of a money laundering conspiracy that laundered more than $4 million, which involved money runners agreeing to engage in laundering for a fee. *See* ECF No. 75 (Tobore Plea) at 9, 18. He fraudulently registered corporate entities and obtained tax ID numbers so he could instruct others to use it to open fraudulent corporate bank accounts. *See, e.g.*, Tobore Plea at 12; Exs. 13-14. Conspirators agreed to move money through bank accounts using false names and runners before eventually converting money to cash so that the defendant's name would not appear directly on financial transactions. *Id.* He also found third parties such as Y.K. willing to move money for a fee and used them to launder a smaller share of fraud proceeds. *See* Ex. 7 # 7.

Erhinmwinrose and Agbure coordinated the runners, including Elegba, Tobore, and Y.K. Tobore Plea at 10. The methods used to launder money included:

- Concealment money laundering through Green Dot bank accounts, where coconspirators would purchase cards linked to the bank accounts, register them using stolen PII and addresses of Agbure, Elegba, or Tobore, and request disbursement of wire fraud proceeds to these bank accounts.

- Concealment money laundering through the purchase of money orders and cash withdrawals, with those money orders or cash then deposited or delivered to to other coconspirators.

- Concealment money laundering through fraudulent bank accounts under false names, which added layers to conceal the involvement of Agbure and Erhinmwinrose in profiting from fraud proceeds;

- Promotional money laundering to pay the expenses for future and additional fraud, including to pay for cellular devices or services, purchase new debit cards to register new Green Dot bank accounts, or deposit money to Agbure's corporate bank accounts to make it appear that Agbure had legitimate revenues before submitting additional fraudulent applications.

Tobore Plea at 10-17. Erhinmwinrose set fees for the money runners, which typically were approximately five percent but which he adjusted based on external circumstances. *See* Ex. 7 # 7 (listing messages that increased Y.K.'s fees to 7 percent after bank scrutiny).

## IV. The proffered statements are admissible at trial

### A. Erhinmwinrose's statements in the ledger and facilitating accounts are admissible against him

The Court should make preliminary findings in advance of trial that (a) Erhimwinrose used the email accounts in Ex. 1, and thus, (b) statements in these accounts are admissible against him under Rule 801(d)(2)(A). Such a preliminary finding would streamline the trial and help avoid lengthy sidebars each time statements from various accounts are offered into evidence.

### B. Coconspirator statements in the Government's *James* log are admissible against Erhinmwinrose

The government has listed the types of coconspirator statements it intends to introduce at trial. *See* Ex. 7. The chart includes an excerpt or summary of each statement; an identification of the coconspirator declarant; the date(s) of the statement; the source and additional context for the statement; and the basis for the statement's admissibility pursuant to Rule 801(d)(2)(E).

### C. Notice of coconspirator testimony

The government also gives notice that it plans to call coconspirators at trial who had written and oral communications with Erhinmwinrose. These individuals will potentially describe additional statements made by coconspirators including Erhinmwinrose not captured in written messages, including his instructions to destroy

evidence after the government's investigation became known.[3] The government will provide the identity of its witnesses and provide all relevant impeachment and Jencks Act material consistent with the timeline required by statute, local rules, practice standards, and any other Court order.

## V.    CONCLUSION

Due to the volume of electronic evidence and number of email accounts used by the conspirators, this notice distinguishes defendant and coconspirator statements that the government will seek to admit under Rule 801(d)(2)(A) and (E). *Hardy* and similar cases support making preliminary findings as to admissibility of coconspirator statements under Rule 801(d)(2)(E) and the Court has discretion to make these findings with or without an evidentiary hearing to streamline a trial. The same logic supports preliminary findings that the accounts in were used by Erhinmwinrose to communicate with coconspirators and thus contain Rule 801(d)(2)(A) statements. Should the Court wish to set a hearing, the Government will present testimony and additional evidence.

---

[3] At trial, the government also will introduce additional statements of Erhinmwinrose from other accounts for which no preliminary finding is needed. For example, Erhinmwinrose messaged coconspirators from various WhatsApp accounts; the government anticipates that coconspirators will testify about the foundation for attributing these statements to Erhinmwinrose without any need for preliminary findings.

PETER MCNEILLY
United States Attorney

By: */s/ Craig Fansler*
Craig Fansler
Sonia Dave
Assistant United States Attorneys
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Craig.Fansler2@usdoj.gov
Sonia.Dave@usdoj.gov
Attorneys for the United States

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 27, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

                                                By:   s/ *Elizabeth Gomez Solis*
                                                Elizabeth Gomez Solis
                                                Legal Assistant
                                                U.S. Attorney's Office